Alan E. Engle (SBN 224779)
aengle@cbcounselor.com
Ben Solter (SBN 269388)
bsolter@cbcounselor.com
Cross-Border Counselor, LLP
1115 Seal Way
Seal Beach, CA 90740
Telephone: (310) 428-6985

Attorneys for Plaintiff HK SISHUN TRADE CO., LIMITED,

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HK SISHUN TRADE CO., LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>EGREEN TRANSPORT CORPORATION,<br><br>Defendant. | Case No.: 5:25-cv-00663<br><br>**HK SISHUN TRADE CO., LIMITED'S MEMORANDUM OF POINTS AND AUTHORITIES ISO *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**<br><br>Date: March 14, 2025<br>Time: unknown<br>Place: unknown, 3470 Twelfth Street Riverside, CA 92501 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................2

II. STATEMENT OF FACTS ................................................................................3

III. ARGUMENT .....................................................................................................6

    A. Legal Standard...............................................................................................7

    B. Plaintiff Meets the Standard for a Temporary Restraining Order
       and Preliminary Injunction Allowing for Removal of Its Goods ...............8

       1. Plaintiff is Likely To Prevail on the Merits .........................................9

       2. Plaintiff Will Suffer Irreparable Injury If It is Denied Access ...............10

       3. Balance of the Hardships is Strongly in Plaintiff's Favor .......................11

       4. The Public Interest Favors a TRO and Injunction ...................................12

       5. Amount of Bond.......................................................................................12

IV. CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

*Abdou v. Davita, Inc.,* 734 F. App'x 506 (9th Cir. 2018) .............................11

*Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*,
    584 F.2d 308 (9th Cir. 1978) .................................................................9

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    224 F.Supp.3d 957, 976 (C.D. Cal. 2016)..............................................10

*Fabrique Innovations, Inc. v. Etiwanda Logistics, Inc.,*
    2020 WL 5441576 (C.D. Cal. July 30, 2020) .....................................5, 10

*Gerber Plumbing Fixtures, LLC v. Amerifreight, Inc.,*
    2015 WL 3824149 (C.D. Cal. June 18, 2015)....................................passim

*Lamon v. Pliler*, 2006 WL 120088 (E.D. Cal. Jan. 12, 2006) ........................7

*Plummer v. Day/Eisenberg, LLP*, 184 Cal.App.4th 38 (2010)........................9

*Reed v. Nevada Dep't of Corr.*, 691 F. App'x 843 (9th Cir. 2017) ................7

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .............................12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .................................................................7

*Su v. Egreen Transport Corporation, et al.*
    No. 5:25-CV-00092-WLH-(SPx) (C.D. Cal. January 29, 2025)..........3, 12

*Voris v. Lampert*, 7 Cal.5th 1141 (2019) ......................................................9

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
    526 F.2d 86 (9th Cir. 1975) .................................................................8

**STATUTES**

Cal. Com. Code §§ 7209 and 7210................................................................5
Cal. Com. Code § 7403.................................................................................4

**OTHER AUTHORITIES**

3 C.J.S. Warehousemen and Safe Depositories § 6 ...................................... 12

## I.  INTRODUCTION

Plaintiff HK Sishun Trade Co., Limited ("Sishun") is an international trading company headquartered in China that imports products manufactured in Asia to the United States and other countries. It sells a broad range of goods, such as tools and consumer products, to US retailers such as Home Depot and Walmart. It also sells goods to individual consumers via online platforms such as Amazon.com and Ebay.com.

Defendant Egreen Transport Corporation ("Egreen") is a warehousing and services company that stores its customers' goods and arranges for their shipment within the United States, both to major retailers and to induvial customers who make online orders. It does this by closely integrating its inventory management system with its customers' online ordering systems. It receives orders, packages goods, affixes address labels, and ships them from its warehouses to customers.

Since 2021, Sishun has worked with Egreen to store and ship its goods in the United States. As detailed in the Complaint and Declaration of Ian Huang, toward the end of 2024 the parties' relationship began to deteriorate. The relationship has now deteriorated to the extent that last Friday, March 7, 2025, Sishun formally demanded Egreen release approximately $55 million dollars worth of Shisun's warehoused goods, amounting to approximately 900,000 items, to Sishun's custody.

Egreen has refused to comply with this request and has demand that Sishun pay it $46,973,120.91 in order to release Sishun's property. As detailed in the Complaint and Huang Declaration, this is a pretextual demand made in response to Sishun's termination of the parties' relationship with no basis in law, any contract between the parties, or their prior course of dealing. It is a reckless gambit supported by incoherent invoices to extract unearned fees using the unlawful withholding Sishun's property as leverage.

Memorandum ISO TRO
Case No.: 5:25-cv-00663

Because Sishun cannot fulfill orders or deliver goods to customers so long as Egreen refuses to surrender custody of Sishun's property, Sishun is being irreparably injured by Egreen's refusal to release its goods and seeks a temporary retraining order and preliminary injunction to require Egreen to turn over custody of the goods.

## II.    STATEMENT OF FACTS

The parties' relationship began when they entered into a "WAREHOUSE RATES AND CHARGES AGREEMENT" (the "Agreement") in January 2021. Complaint, Ex. 1. Among other things, the Agreement specifies various fees related to Egreen's warehousing and shipping services. *Id.* at pp. 1-3. By its terms, the Agreement concerns shipment to and storage in a single warehouse in Ontario, California. *Id*. at sec.

On information and belief, Egreen no longer operates a warehouse in Ontario, and Sishun's goods in Southern California are located in warehouses in Fontana (San Bernardino County), Bloomington (San Bernardino County), and Jurupa Valley (Riverside County). The locations of Egreen's warehouses are at least: 11450 Philadelphia Ave, Jurupa Valley, CA 91752; 18550 Orange Street, Bloomington, CA 92316; 2380 W Baseline Rd, Fontana, CA 92336; 1980 US-1 North Brunswick Township, NJ 08902; 102 Norwest Ct Suite 100, Savannah, GA 31407; 455 Jimmy Deloach Pkwy, Savannah, GA 31407. Exhibit A, "Judgement and Permanent Injunction," *Su v. Egreen Transport Corporation, et al.*, No. 5:25-CV-00092-WLH-(SPx) (C.D. Cal. January 28, 2025) at ¶E.

The parties worked cooperatively with one another from 2021 to 2024, occasionally negotiating rate increases. Huang Dec. at ¶4. In late 2024, Egreen began to demand rate increases and additional payments from Sishun. Sishun did not agree to these increases. *Id*. at ¶5.

In the billing statement for January 2025, sent by Egreen on February 6,

3

Memorandum ISO TRO
Case No.: 5:25-cv-00663

2025, Egreen applied a unilateral 20% price increase. When settling the January invoice, Sishun did not pay the 20% additional fee imposed by Egreen, but it did pay $2,069,452 for agreed warehousing, processing, shipping, and related services. Complaint at ¶15.

Because of the rupture in the parties' relationship, on Friday, March 7, 2025, Sishun sent Egreen a letter demanding release of its goods. The letter was attached to an email, the subject of which was "Formal Request for Return of Sishun's Goods." Complaint, Ex. 3.

The letter notified Egreen that Sishun was invoking its right to delivery of its goods pursuant to Clause 20 of the parties' initial Agreement, which states that, "These goods will be delivered to the Depositor at Depositor's request…24 to 48 hours advance notice is required for delivery and pick-up." *Id*. Sishun also has a right to its goods under the Cal. Com. Code §7403, its general right of ownership, and pursuant to its authority over Egreen as its agent.

In response to Sishun's letter, on Saturday, March 8, counsel for Egreen replied that he was attaching an invoice for services rendered by Egreen in February 2025 for an amount of $2,901,109.79, which, among other things, includes a $669,486.88 charge for "Misc." Complaint, Ex. 4, March 8, 2025 email and invoice dated 3/3/2025. In his cover letter, Egreen's counsel states, "I am attaching Egreen's invoice for services rendered for just last month, Feb. 2025. This is not the total amount owed by your client to Egreen….In any event, your position that Egreen should return the goods without payment of the amount owed is, of course, untenable." *Id*.

On Sunday, March 9, 2025, counsel for Sishun sent a response to Egreen requesting a full statement of any fees allegedly owed by Sishun to Egreen by March 10, 2025. Complaint, Ex. 5, March 9, 2025 email. The response noted that, "Under the relevant warehouse receipt statutes (such as the provisions of

Memorandum ISO TRO
Case No.: 5:25-cv-00663

UCC Article 7, including Ann. Cal. Com. Code §§ 7202, 7209, and 7210), warehouses must accurately specify the charges, fees, or expenses for which they claim a lien or right of payment. We therefore request assurance that these charges fully comply with the applicable requirements and that they properly reflect any amounts Egreen contends Sishun must pay." *Id*. The letter further notes that, "Our client's goods are losing value daily and cannot be sold while sequestered by Egreen. If Egreen is unwilling to cooperate in this matter we will be forced to seek a court order compelling release of the goods." *Id*.

In response to Sishun's request for a specification of legitimate warehouse fees due, on Monday, March 10, 2025 counsel for Egreen responded with an email attaching 11 separate invoices totaling $46,973,120.91. Complaint, Ex, 6, March 10, 2025 Email and attached invoices. Among other things, the attached "Payment Due Summary List" adds an item for "legal fees" for $990,000.00, rendering the total amount allegedly due, $47,963,120.91.

These fees purportedly must be paid prior to release of Sishun's property, but the fees do not reflect any legitimate charges or lien under the parties' contract or California law governing warehouse liens. Cal. Com. Code §§ 7209 and 7210. See, e.g., *Fabrique Innovations, Inc v. Etiwanda Logistics, Inc.*, No. 5:20-CV-00861-VAP-SHKX, 2020 WL 5441576 (C.D. Cal. July 30, 2020) at *3 ("The goods a warehouse retains as security for its lien need not be the exact amount of the lien (see Cal. Com. Code § 7210(f)), but the statute makes clear there must be a reasonable relationship between the goods withheld and the charges owed.")

For example, Invoice 7 purports to be for two items, "SAV1 Warehouse Space Adjustment Fee" and "SAV2 Warehouse Space Adjustment Fee" in the amount of $12,988,896.51 and $13,520,826.08 respectively, for a total charge of $26,509,722.62. These purported fees appear to reflect funds Egreen would like

5

Memorandum ISO TRO
Case No.: 5:25-cv-00663

to obtain for opening two warehouses in Savanna, Georgia, but such fees have no relation to any contractual agreement or any potential possessory warehouse lien on Sishun's property stored in warehouses in Southern California (or elsewhere). If Egreen believes it is contractually entitled to such payment, it can file a lawsuit or file a counterclaim in this one. It cannot unilaterally alienate Sishun's property.

Not only has Egreen prevented Sishun from removing its goods from Egreen's warehouses, Egreen has also attempted to impermissibly transport Sishun's goods to an undisclosed location in an effort to gain leverage and extort improper payments from Sishun. As a result, Sishun has been forced to hire security personnel to monitor Egreen's warehouses and the status of Sishun's property. This has led to confrontation at least one warehouse location where police were called. Therefore, Sishun also seeks an Order retraining Egreen from relocating Sishun's property without Sishun's permission.

**III. ARGUMENT**

Plaintiff is seeking a temporary restraining order pending a hearing on a preliminary injunction during the pendency of this lawsuit. Sishun's Complaint satisfies each of the requirements for seeking a restraining order and injunctive relief.

Sishun seeks a temporary restraining order mandating Egreen open regular operations and provide Sishun access to remove its goods in order to fulfill customer orders, inventory product, and remove its products to a replacement warehouse. Time is of the essence for Sishun to access its goods. Failure to complete existing orders may result in irreparable injury to Sishun's business and will interfere with its customers' plans, which often involve construction and other trades, and have negative downstream effects.

On the other hand, Egreen gains nothing by holding on to the goods other than leverage in a scheme to extract improper payments from Sishun. The parties

6

Memorandum ISO TRO
Case No.: 5:25-cv-00663

have had a course of dealing over four years and Sishun has paid Egreen over $10 million dollars in the past year. Ex. 6 to Complaint at p. 4. If Egreen believes it is entitled to additional payments it can file a counterclaim in this lawsuit or enter mediation. What Egreen cannot do is engage in unlawful self-help under false presents of a "warehouse lien" to the detriment of Sishun and its customers.

The balance of the equities is strongly in favor of Sishun, and without such injunctive relief, Sishun's supply chain will be disrupted, leading to loss of customers, damage to its goodwill in the industry, and interference with its ability to obtain future business opportunities with these customers and others.

**A. Legal Standard**

In the Ninth Circuit, the standard for the grant of a preliminary injunction and a TRO is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). "It is apparent…that requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. [citing cases] In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice." *Lamon v. Pliler*, 2006 WL 120088 at *1 (E.D. Cal. Jan. 12, 2006); s*ee also Reed v. Nevada Dep't of Corr.*, 691 F. App'x 843 (9th Cir. 2017) (citing *Stuhlbarg Int'l Sales Co.*). The request for a temporary restraining order and for a preliminary injunction can therefore be analyzed under the same standards.

The Ninth Circuit has determined that courts should issue a temporary restraining order and/or preliminary injunction if, "(1) the plaintiff will suffer irreparable injury if injunctive relief is not granted, (2) the plaintiff will probably prevail on the merits, (3) in balancing the equities, the defendants will not be harmed more than plaintiff is helped by the injunction, and (4) granting the

Memorandum ISO TRO
Case No.: 5:25-cv-00663

injunction is in the public interest." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 526 F.2d 86, 87 (9th Cir. 1975).

As an alternative test, "[i]f the harm that may occur to the plaintiff is sufficiently serious, it is only necessary that there be a fair chance of success on the merits." *Id*. at 88. See also *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314–15 (9th Cir. 1978) (same tests). This equitable relief is within the discretion of the Court after balancing various factors. *Benda* at 314.

Another Central District court previously dealt with a quite similar circumstance. In *Gerber Plumbing Fixtures, LLC v. Amerifreight, Inc.*, No. 2:15CV-04146-ODW, 2015 WL 3824149, at *1 (C.D. Cal. June 18, 2015) (Wright, J.), the plaintiff had $7.6 million of plumbing supplies in defendants' warehouse, and defendant refused to allow access to the goods, or to ship them. The plaintiff alleged that the defendants were "holding millions of dollars' worth of inventory hostage," and sought immediate and preliminary injunctive relief to have the goods released. *Id*. at *1. The court granted a mandatory injunction, without bond, allowing plaintiff access to move its goods on a 24-hour basis for 5 days to allow the plaintiff to meet existing orders, and during business hours for the following 10 days to remove remaining inventory. *Id*. at *4-5. In particular, the court held that plaintiff was likely to prevail on its claim for conversion, that the loss of sales and goodwill due to the withheld goods, and that the equities tipped in plaintiff's favor and that the public interest was neutral. *Id*. at 3-4. In this case, Sishun asserts a public interest in consumers receiving tools and other goods they have ordered and in the orderly operation of warehouse facilities to allow for reliable commercial exchange.

**B. Plaintiff Meets the Standard for a Temporary Restraining Order and Preliminary Injunction Allowing for Removal of Its Goods**

Sishun meets the test for a temporary restraining order and preliminary

8

Memorandum ISO TRO
Case No.: 5:25-cv-00663

injunction, because it will suffer irreparable injury if the relief is not granted, it is likely to prevail on the merits, because Defendant will not be harmed more than the Plaintiff will be helped by the relief, and because the public interest favors an injunction.

### 1. Plaintiff is Likely to Prevail on the Merits

Sishun is seeking injunctive relief based on conversion claim. While Sishun acknowledges that the parties' contractual history is complex, and their initial Agreement (Ex. 1 to Complaint) may not contemplate their course of dealing over the last four years, its claim for conversion is straightforward.

The tort of conversion is the "wrongful exercise of dominion over personal property of another." *Voris v. Lampert*, 7 Cal.5th 1141, 1150 (2019) (quoting 5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 810, p. 1115). The essential elements of conversion are "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Id.* "[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 58. "[C]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris*, 7 Cal.5th at 1158.

This case is on all fours with *Gerber Plumbing* with regard to conversion. The defendant is holding tens of millions of dollars' worth of Plaintiff's goods hostage in order to extort unreasonable fees from Plaintiff and has refused to release them upon demand. Complaint at ¶ 17-18. Sishun has approximately $55 million worth of goods in Defendant's warehouse. Huang Decl. at ¶ 12. Egreen has intermittently refused to ship Sishun's orders to customers as a way of

9

Memorandum ISO TRO
Case No.: 5:25-cv-00663

extorting Sishun's to pay higher rates and unearned fees amounting to tens of millions of dollars. *Id.* at ¶ 11. Sishun is suffering ongoing injuries from the denial of access to its goods, and Egreen gains nothing from this denial. *Id.* at ¶ 12-14. This similar fact pattern led the *Gerber* court to issue a restraining order and preliminary injunction without bond. *Gerber Plumbing*, 2015 WL 3824149 at *4-5.

This case is also similar to *Fabrique Innovations, Inc v. Etiwanda Logistics, Inc*, No. 5:20-CV-00861-VAP-SHKX, 2020 WL 5441576 (C.D. Cal. July 30, 2020), where the court found the plaintiff likely to prevail on its conversion claim against a warehouse and granted a preliminary injunction against sale of plaintiff's goods pursuant to an alleged lien. *Id.* at *3. The court ordered that plaintiff could remove its property from defendant's warehouse, "within 30 days of the date of this Order at a rate of three truckloads per business day, provided that if [defendant] is able to accommodate additional removal, it will provide written notice to [plaintiff] at least 48 hours prior to such availability." *Id.* at *5.

Accordingly, Sishun is likely to prevail on the merits of its claims, and in similar, though less clear, cases courts in this District have found it appropriate to provide injunctive relief permitting the removal of warehoused goods when there existed a dispute as to fees owed the warehouse.

**2. Plaintiff Will Suffer Irreparable Injury If It is Denied Access**

Further, Plaintiff will suffer irreparable injury if the relief is not granted. Courts in this jurisdiction have recognized that "harm to one's reputation, goodwill, or relationships" is sufficient to constitute irreparable harm. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 976 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017). "Damage to a company's goodwill and reputation can constitute irreparable harm because this sort of harm is difficult to

10

Memorandum ISO TRO
Case No.: 5:25-cv-00663

measure." *Abdou v. Davita, Inc.*, 734 F. App'x 506 (9th Cir. 2018). See also *Gerber Plumbing*, 2015 WL 3824149 at *4-5 (holding the loss of customer sales and loss of goodwill to be irreparable harm).

Here, the irreparable injury is clear for the same reasons as in *Gerber Plumbing* and the other cases cited above. If Egreen is permitted to withhold Sishun's goods and not ship them to its customers, Sishun will be unable to deliver ordered goods to meet orders, thus damaging customer relationships and goodwill in addition to lost sales. Huang Dec. ¶12. As in the cases cited above, this is irreparable harm. Here the potential for harm is compounded by the possibility of permanent negative seller reviews on Amazon.com and other online platforms, and the potential interference with Sishun's seller privileges, jeopardizing tens of millions of dollars in sales. *Id*. at ¶6.

### 3. Balance of the Hardships is Strongly in Plaintiff's Favor

Here it is evident that Plaintiff will be harmed more in the absence of an injunction than Defendant will be by the grant of one. If the goods continue to be alienated from Sishun, it will suffer the above-mentioned harms: injury to its customer relationships, injury to its reputation and goodwill, injury with its relationships to retailers and online platforms, and depression destruction of the market for Plaintiff's goods. Huang Dec. ¶17-18. By contrast, there is no possible harm to Defendant that cannot be remedied by monetary damages.

Importantly, it is also equitable to issue this injunction. As detailed in the Complaint, Sishun has demanded that it be allowed to remove its goods and, in response, Egreen has made outrageous demands and created false invoices in an effort to substantiate a pretext for a possessory warehouse lien. As indicated by the Declaration of Edward Zhu, this is not the only time Egreen has engaged in such tactics in its business dealings, and its unlawful activities should be

11

Memorandum ISO TRO
Case No.: 5:25-cv-00663

restrained and not rewarded.

Further indication of how Egreen operates its business is evidenced by a recent January 2025 consent judgement in the Central District involving Egreen's nonpayment of employees for their labor, including consent to punitive damages. Exhibit A, Judgement and Permanent Injunction, *Su v. Egreen Transport Corporation, et al.*, No. 5:25-CV-00092-WLH-(SPx) (C.D. Cal. January 28, 2025) at ¶22.

While Sishun acknowledges that the volume of goods in this case is significant, Egreen is in the warehouse and transportation business and should be able to accommodate the orderly removal of Sishun's goods over the course of a week without undue difficulty.

### 4.  The Public Interest Favors a TRO and Injunction

When the reach of an injunction is limited only to the parties the public interest will be neutral. "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009). "The business of warehousing is affected with a public interest or public nature and use…." 3 C.J.S. Warehousemen and Safe Depositories § 6 (Dec. 2024 Update).

Sishun's wholesale and retail customers are currently being deprived of goods sequestered by Egreen, which include tools and trade-related goods. These companies and individuals are being injured by being deprived of items they have ordered. Thus, the public interest favors Sishun being able to access its goods so they can be delivered to buyers for their needs.

### 5.  Amount of Bond

As in *Gerber Plumbing*, it should not be necessary for Sishun to post any

12

Memorandum ISO TRO
Case No.: 5:25-cv-00663

bond in this case. It is merely seeking to effect the normal removal of goods from a warehouse. It has paid Egreen over $12,000,000 in Egreen invoices over the last year and reliably pays legitimate business fees. See Complaint, Ex. 6 at p. 4. If the Court requires a bond, however, it should be no more than $2,231,622.91, the amount of Egreen's March 3, 2025 invoice to Sishun minus the $669,484.88 (30%) additional "misc." fee demanded. *Id*. at p. 11.

**IV. CONCLUSION**

For the reasons stated above, Sishun respectfully requests that the Court issue a temporary restraining order and preliminary injunction requiring Egreen to release custody of Sishun's goods. In addition, or in the alternative, Sishun requests the Court issue a temporary restraining order and preliminary injunction preventing Egreen from transferring, assigning, pledging, concealing, encumbering, damaging, moving, or otherwise disposing of or altering any of Sishun's property.

Respectfully Submitted,

Dated: March 13, 2025          CROSS-BORDER COUNSELOR, LLP

/s/ Alan E. Engle

Alan E. Engle (SBN 224779)
aengle@cbcounselor.com
Ben Solter (SBN 269388)
bsolter@cbcounselor.com
Cross-Border Counselor, LLP
1115 Seal Way
Seal Beach, CA 90740
Telephone: (310) 428-6985

Attorneys for Plaintiff HK
SISHUN TRADE CO.,
LIMITED

13

Memorandum ISO TRO
Case No.: 5:25-cv-00663